UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AARON ROY HENDRICKS,

                    Plaintiff,

          -v-                          6:25-CV-43 (DNH/MJK)

CITY OF UTICA, NEW YORK, CITY
OF UTICA POLICE DEPARTMENT,
UTICA POLICE OFFICER BRYCE
PATTERSON, UTICA POLICE SGT
KYLE PIERSALL, UTICA POLICE
SGT CHARLES GOLDSTEIN, and
JOHN AND JANE DOES,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                           OF COUNSEL:

OFFICE OF FRANK POLICELLI              FRANK POLICELLI, ESQ.
Attorneys for Plaintiff
10 Steuben Park
Utica, NY 13501

FOTI HENRY PLLC                        DANIEL CARTWRIGHT, ESQ.
Attorneys for Defendants               DAVID H. WALSH, IV, ESQ.
403 Main Street, Suite 225
Buffalo, NY 14203

DAVID N. HURD
United States District Judge

## DECISION & ORDER

### I.   INTRODUCTION

On January 8, 2025, plaintiff Aaron Roy Hendricks ("plaintiff") commenced this 42 U.S.C. § 1983 action against defendants Utica Police Department ("UPD"), the City of Utica, New York (the "City"), UPD Officer Bryce Patterson ("Officer Patterson"), UPD Sergeant Kyle Piersall ("Sgt. Piersall"), UPD Sergeant Charles Goldstein ("Sgt. Goldstein"), and unidentified supervisory UPD Officers alleging that defendants violated his civil rights on April 10, 2024, when they tasered and arrested him during a traffic stop in the City of Utica, New York.  *See* Dkt. No. 1.

Plaintiff's nine-count complaint asserts § 1983 claims for false arrest, malicious prosecution, and excessive force, along with related state-law claims for false imprisonment, malicious prosecution, assault and battery, negligence, and violations of New York Civil Rights Law § 79-n.  Dkt. No. 1.

On January 7, 2026, defendants moved under Federal Rule of Civil Procedure ("Rule") 56 for summary judgment on all of plaintiff's claims.  Dkt. No. 30.  The motion has been fully briefed, Dkt. Nos. 31, 34, and will be decided on the basis of the submissions without oral argument.

### II.   BACKGROUND

The following facts are taken from the parties' competing statements of material facts and the attached exhibits and are undisputed unless otherwise

noted.  *See* L.R. 56.1.  Defendants have offered body worn camera footage of the incident.  Dkt. Nos. 30-4, 33.  Pinpoint citations to this footage correspond with the timestamp superimposed on the upper right-hand corner.  *See id.*

On the evening of April 10, 2024, plaintiff was a passenger in the front seat of "a vehicle driven by Precious Grant ("Grant") . . . [in] Utica, New York, when police pulled them over."  Dkt. No. 30-12 ("Defs.' SMF") ¶ 1.  Officer Patterson approached the front passenger-side door while another officer approached the driver's side.  *Id.* ¶ 5.

The officers informed Grant and plaintiff that they had stopped the vehicle because Grant failed to timely activate her turn signal at least twice.  Defs.' SMF ¶¶ 6–8.  At that time, Officer Patterson observed that plaintiff was not wearing a seatbelt.  *Id.* ¶ 9.  According to plaintiff, he had removed his seatbelt *after* Grant had already pulled over and turned off the vehicle.  Dkt. No. 31-1 ("Pl.'s Resp. SMF") ¶ 2.

Officer Patterson asked plaintiff for identification, but plaintiff stated that he did not have identification with him and "told the officers to call his father[ ] Michael Washington," a UPD detective.  Defs.' SMF ¶¶ 10–11.  Officer Patterson asked plaintiff for his name, but he refused to provide it and again told Officer Patterson to "call [his] father."  *Id.*; Pl.'s Resp. SMF ¶ 3; *see also* Dkt. No. 30-1 ("Cartwright Decl."), Ex. C ("Patterson BWC") at 19:29:33–19:29:41.

Officer Patterson informed plaintiff that he would need to exit the vehicle if he could not identify himself. Defs.' SMF ¶ 12; *see also* Patterson BWC at 19:29:40–19:29:43. Grant interjected, telling Officer Patterson that she had identification with her, but Officer Patterson responded: "I'm asking for [plaintiff's], he doesn't have his seatbelt on." Patterson BWC at 19:29:41–19:29:45.

Then, Officer Patterson opened the passenger-side door and ordered plaintiff to step out of the vehicle. Defs.' SMF ¶ 12; *see also* Patterson BWC at 19:29:46–19:30:10. Plaintiff repeatedly refused and, instead, told Officer Patterson to "call [his] father." Defs.' SMF ¶ 13; *see also* Patterson BWC at 19:29:46–19:30:21.

After a short time, Officer Patterson reached inside the vehicle and grabbed plaintiff's right arm in an attempt to physically remove him from the vehicle. Defs.' SMF ¶ 16; Patterson BWC at 19:30:22–19:30:30. Plaintiff resisted Officer Patterson's efforts, and at least one other officer arrived on scene to assist. Defs.' SMF ¶¶ 16, 18; Patterson BWC at 19:30:22–19:30:30. Together, the officers tried to pull plaintiff out of the vehicle, but he continued to resist. Patterson BWC at 19:30:40–19:31:12.

Officer Patterson warned plaintiff several times that he would be tased if he continued to resist. Defs.' SMF ¶ 15. At some point during the struggle, plaintiff indicated that he would voluntarily exit the vehicle. Patterson BWC at 19:31:12. Defendants let go of plaintiff's arm, and Officer Patterson ordered

plaintiff out of the vehicle with his taser pointed at plaintiff. *Id.* at 19:32:17–19:32:19.

However, as plaintiff slowly started to exit the vehicle, Officer Patterson suddenly stepped towards the vehicle and attempted to grab plaintiff. Patterson BWC at 19:32:19–19:32:21. Plaintiff pulled away from Officer Patterson's sudden reaching movement, and Officer Patterson immediately deployed his taser. *Id.* at 19:32:19–19:32:26; *see also* Dkt. No. 30-5 ("Pl.'s Dep.") at 51–52 ("So I do remember as I'm getting out, he like grabbed me, and I just  [pulled back] like as a reflex, but I'm coming out of the car.").

Officer Patterson tased plaintiff for about five seconds, and plaintiff slowly fell from the vehicle onto the ground. Defs.' SMF ¶ 22; Patterson BWC at 19:32:21–19:32:26. Multiple officers rolled plaintiff over onto his stomach and handcuffed his wrists behind his back. Defs.' SMF ¶ 22; Patterson BWC at 19:32:22–19:33:05. Plaintiff was arrested. *See id.*

UPD officers transported plaintiff to the police station and charged him with Obstruction of Governmental Administration in the Third Degree in violation of N.Y. Penal Law § 195.05, Resisting Arrest in violation of N.Y. Penal Law § 205.30, and failing to wear seat belt in violation of N.Y. Vehicle and Traffic Law § 1229-c. Defs.' SMF ¶ 23.

Plaintiff later pleaded guilty to the seatbelt violation in satisfaction of all these charges. Defs.' SMF ¶ 24; *see also* Dkt. No. 31-2 ("Pl.'s Decl.") ¶ 7

(denying guilt but conceding that he pleaded guilty to the seatbelt violation in satisfaction of all charges).

## III.  **LEGAL STANDARD**

The entry of summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is considered "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In conducting this analysis, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *In re Dana Corp.*, 574 F.3d 129, 152 (2d Cir. 2009) (internal quotation marks omitted) (emphasis omitted).  Even so, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"'The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists,' but 'when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to' an absence of evidence 'on an essential element of the

- 6 -

nonmovant's claim.'" *Bustamante v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (quoting *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023)).

## IV.  DISCUSSION

Plaintiff's complaint asserts § 1983 claims for false arrest, malicious prosecution, and excessive force in violation of the Fourth Amendment, *see* Compl. ¶¶ 31–42, along with related state-law claims for assault, battery, false imprisonment, malicious prosecution, negligence, and violations of § 79-n of the N.Y. Civil Rights Law, *id.* ¶¶ 43–65.

Defendants have moved for summary judgment on all of plaintiff's claims, Dkt. No. 30-13 ("Defs.' Mem."). Plaintiff has opposed. Dkt. No. 31-3 ("Pl.'s Opp.").

### A.  Claims Against UPD And Official-Capacity Claims[1]

Defendants argue that plaintiff's claims against UPD, and against the UPD officers named only in their "official capacities," should be dismissed because those claims are duplicative of any claims plaintiff may have asserted against the City (discussed separately below). Defs.' Mem. at 8–9. Plaintiff has not opposed this branch of defendants' motion. *See* Pl.'s Opp. at 1.

---

[1]  As noted *supra*, plaintiff has also named Doe defendants. But discovery is closed and these Does have not been identified. Accordingly, they must be dismissed without prejudice. *See, e.g.*, *Harris v. Tioga County*, 663 F. Supp. 3d 212, 233 (N.D.N.Y. 2023) (collecting cases).

1.  **UPD**

Plaintiff's claims against UPD will be dismissed.  It is well settled that "[a] city police department is not an independent, suable entity separate from the municipality in which the police department is organized."  *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N.Y.,* 897 F. Supp. 148 (S.D.N.Y. 1995)); *see also Henry v. Cnty. of Nassau*, 6 F.4th 324, 336 (2d Cir. 2021) (affirming the dismissal of county police department as a "non-suable agency" of the county).  Accordingly, plaintiff's claims against UPD are dismissed, and any allegations against UPD will be treated as if they have been made directly against the City.

2.  **Official-Capacity Claims**

A review of plaintiff's complaint indicates that it does not appear to assert any "official-capacity" claims.  *See generally* Compl.  But to the extent that it does, those claims will be dismissed as duplicative of plaintiff's claims against the City.  *See, e.g.*, *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("A claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself . . . for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Department of Social Services,* 436 U.S. 658, 691 n. 55 (1978)).

## B.  Section 1983 And State-Law False Imprisonment

Defendants primarily argue that plaintiff's § 1983 false arrest and state-law false imprisonment claims must be dismissed because there was probable cause to arrest plaintiff as a matter of law.  Defs.' Mem. at 9–13.  In opposition, plaintiff argues that defendants lacked probable cause to arrest him for any of the charged offenses.  Pl.'s Opp. 1–8.

"A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law."  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citing *Lennon v. Miller,* 66 F.3d 416, 423 (2d Cir. 1995)).

"Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'"  *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)).

"For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause."  *Hernandez*, 939 F.3d at 199.  Where there are multiple arrest charges, a false arrest claim "turns only on whether probable cause

existed to arrest a defendant . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).

As relevant here, the Second Circuit has held that "a false arrest claim must fail 'if [the plaintiff] was convicted of the offense for which he was arrested, because such a conviction represents 'conclusive evidence of probable cause.'" *Carruthers v. Colton*, 153 F.4th 169, 180 (2d Cir. 2025) (first quoting *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986); then quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "[T]his principle applies whether the conviction arose 'by jury verdict or guilty plea.'" *Carruthers*, 153 F.4th at 180 (quoting *United States v. Jones*, 43 F.4th 94, 102 n.6 (2d Cir. 2022)).

The parties do not dispute that plaintiff was convicted of violating N.Y. Vehicle and Traffic Law § 1229-c as a result of the events. *See* Def.'s SMF ¶ 24; Pl.'s Resp. SMF ¶ 9. Accordingly, plaintiff's conviction is conclusive evidence that defendants had probable cause to arrest him as a matter of law.

But even setting plaintiff's conviction aside, defendants argue that there was probable cause to arrest plaintiff because Officer Patterson undisputably observed plaintiff in the vehicle without a seat belt in violation of N.Y. Vehicle and Traffic Law § 1229-c. Defs.' Mem. at 12. In opposition, plaintiff maintains

that Officer Patterson lacked probable cause because this conduct did not violate § 1229-c.  Pl.'s Opp. at 2–3.

"Officers have probable cause when 'they have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Hernandez*, 939 F.3d at 199 (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999)).

Plaintiff was charged with violating § 1229-c(3) of the N.Y. Vehicle and Traffic Law.  Defs.' SMF ¶ 23.  That section provides, in relevant part, that "[n]o person sixteen years of age or over shall be a passenger in a motor vehicle unless such person is restrained by a safety belt approved by the commissioner."  N.Y. Veh. & Traf. Law § 1229-c(3).

Based on the available record, no reasonable juror could conclude that defendants lacked probable cause to arrest plaintiff for violating N.Y. Vehicle and Traffic Law §1229-c(3).  Plaintiff does not dispute that he was a passenger in Grant's vehicle, *see* Pl.'s Resp. SMF ¶ 1, nor does he claim that he *was* wearing a seatbelt during his interaction with Officer Patterson, *id.* ¶ 2.  Instead, plaintiff contends that he did not violate § 1229-c(3) because he "took his seatbelt off when the car was pulled over and the engine turned off so the vehicle was not in operation." *Id.*

Plaintiff's *post hoc* justification has no bearing on the probable cause determination. First off, "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." *D.C. v. Wesby*, 583 U.S. 48, 61 (2018). And in any event, N.Y. Vehicle and Traffic Law § 1229-c(3-a) provides that "it shall be a violation of [§ 1229-c] if a person is seated in a seating position equipped with both a lap safety belt and a shoulder harness belt and such person is not restrained by both such lap safety belt and shoulder harness belt." N.Y. Veh. & Traf. Law § 1229-c(3-a).

The uncontested body-worn camera footage depicts plaintiff seated in Grant's vehicle—unrestrained. Patterson BWC at 19:29:46. In other words, there can be no genuine dispute that Officer Patterson observed plaintiff in the vehicle without a seat belt restraint. *See Scott v. Harris*, 550 U.S. 372 (2007). Consequently, no reasonable juror could conclude that defendants lacked probable cause to arrest plaintiff for violating N.Y. Vehicle and Traffic Law § 1229-c(3). Accordingly, plaintiff's § 1983 and state law false arrest claims must be dismissed.

Plaintiff's contention that "a seat belt violation is not a crime," Pl.'s Opp. at 4, does not alter this conclusion. To be sure, New York law generally requires a police officer to issue an appearance ticket in lieu of making a custodial arrest for low-level offenses committed in the officer's presence. N.Y. Crim. Proc. Law § 150.20(a).

But there are exceptions to this rule.  Under New York law, a police officer need not issue an appearance ticket and may instead arrest a person for a low-level offense where the "person has been given a reasonable opportunity to make their verifiable identity and a method of contact known, and has been unable or unwilling to do so." N.Y. Crim. Proc. Law § 150.20(b)(iii).

This exception applies.  Officer Patterson gave plaintiff a reasonable opportunity to make his verifiable identity known, and plaintiff failed to do so.  It is undisputed that plaintiff failed to produce photographic identification upon Officer Patterson's request.  Defs.' SMF ¶¶ 10–11; Pl.'s Resp. SMF ¶ 3.  And although officers may rely on factors other than photographic identification to ascertain a person's identity, *see* N.Y. Crim. Proc. Law § 150.20(b)(iii) (listing "personal knowledge of such person" and "such person's self-identification" as potential factors), plaintiff repeatedly refused to even provide officers with his name.  Defs.' SMF ¶ 11; Pl.'s Resp. SMF ¶ 3.; *see also* Patterson BWC at 19:29:33–19:29:41.[2]

Further, these state-law considerations aside, "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution." *Virginia v. Moore*, 553 U.S. 164, 176 (2008).  While "[s]tates

---

[2]  Perhaps, as plaintiff suggests, Officer Patterson could have called plaintiff's father to verify plaintiff's identity.  But plaintiff has not established any fact dispute related to this issue, *e.g.*, whether Officer Patterson failed to discharge his state-law legal obligations vis-à-vis an identity verification.  Without plaintiff's name or any other personally identifiable information specific to him, there was no identity for plaintiff's father to verify.

are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id.*

In sum, Officer Patterson's arrest of plaintiff was constitutionally permissible and authorized by state law. Accordingly, plaintiff's § 1983 and state-law false arrest claims must be dismissed.

## C. Section 1983 And State-Law Malicious Prosecution

Next, defendants argue that no reasonable juror could find for plaintiff on his state or federal malicious prosecution claims. *See* Defs.' Mem. at 15–17. In opposition, plaintiff maintains that defendants initiated a prosecution against him without probable cause. *See* Pl.'s Opp. at 1–8; Dkt. No. 35 at 1.

"In order to prevail on a § 1983 claim . . . for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of N.Y.*, 612 F.3d 149, 160–61 (2d Cir. 2010) (internal citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* at 161 (internal quotations omitted).

Case 6:25-cv-00043-DNH-MJK   Document 36   Filed 07/23/26   Page 15 of 28

Defendants argue, in part, that no reasonable juror could conclude that the criminal proceedings terminated in plaintiff's favor. Defs.' Mem. at 16–17. Plaintiff maintains that the obstruction of governmental administration and resisting arrest charges terminated in his favor. Dkt. No. 35 at 1.

"[T]he favorable termination element should generally be assessed charge by charge when a plaintiff was not convicted on all of the charges." *Carruthers*, 153 F.4th at 183. "Applying that rule to the guilty plea context, when a charge is dismissed as part of a negotiated agreement in which the defendant agrees to plead guilty to a different charge, that dismissal does not constitute a favorable termination for the purposes of a malicious prosecution claim." *Id.* at 174; *Chapdelaine v. Desjardin*, --- F.4th ----, 2026 WL 1900103, at *9 (2d Cir. July 2, 2026) (noting same); *see also Martinez v. City of Schenectady*, 761 N.E.2d 560, 564 (N.Y. 2001) ("A termination is not favorable . . . where a prosecution ends because of a compromise with the accused.").

The parties do not dispute that plaintiff pleaded guilty to a seatbelt violation "in full satisfaction of all the charges." Defs.' SMF ¶ 24; Pl.'s Resp. SMF ¶ 9. Because dismissal of the obstruction and resisting arrest charges was conditioned on plaintiff's guilty plea to the seatbelt violation, the proceeding did not terminate in plaintiff's favor as a matter of law. *See Chapdelaine*, 2026 WL 1900103, at *9. Accordingly, plaintiff's § 1983 and state-law malicious prosecution claims must be dismissed.

**D.  Section 1983 Excessive Force and State-Law Assault and Battery**

Defendants argue that they are entitled to summary judgment on plain-tiff's § 1983 excessive force and state-law assault and battery claims because the evidence establishes that defendants used reasonable force to effectuate plaintiff's arrest.  Defs.' Mem. at 17–20.  In opposition, plaintiff argues that a reasonable juror could conclude that tasing plaintiff was unreasonable under the circumstances.  Pl.'s Opp. at 8–9.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  "The elements of New York assault and battery and Section 1983 excessive force claims are 'substantially identical.'"  *Tardif v. City of N.Y.*, 991 F.3d 394, 410 (2d Cir. 2021) (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991)).

"*The* framework for analyzing excessive force claims is set out in *Graham*."  *Cnty. of L.A., Cal. v. Mendez*, 581 U.S. 420, 429 (2017) (emphasis in original).  The *Graham* framework "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396.

Conducting this balancing "requires careful attention to the facts and circumstances of each particular case" including: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The three factors set forth in *Graham* are not an exhaustive list. *See Cugini v. City of N.Y.*, 941 F.3d 604, 613 (2d Cir. 2019) ("A court's reasonableness analysis is not limited to a factual checklist."). Consistent with this understanding, courts routinely consider additional factors that bear on the reasonableness of a particular use of force. *See, e.g.*, *Barnes*, 605 U.S. at 80 (considering "actions the officer took during the stop, such as giving warnings"); *Brown v. City of N.Y.*, 798 F.3d 94, 103 (2d Cir. 2015) (considering "the availability of a less aggressive way of accomplishing an arrest"); *Jones v. Treubig*, 963 F.3d 214, 236 (2d Cir. 2020) (considering whether there was "a reasonable opportunity to re-assess the circumstances before utilizing additional force"); *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010) (considering whether the officer used "a significant degree of force").

Ultimately, "a court's role in considering excessive force claims is to determine whether a jury, instructed as to the relevant factors, could reasonably find that the force used was excessive." *Brown v. City of N.Y.*, 798 F.3d 94, 103 (2d Cir. 2015). And in making this determination, the court must "evaluate

- 17 -

the record from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Tracy*, 623 F.3d at 96 (internal quotations omitted).

The first relevant factor is the severity of the crime at issue. *See Graham*, 490 U.S. at 396. Plaintiff was arrested for minor offenses. Namely, a traffic infraction and two misdemeanors that occurred during the arrest for the traffic infraction. Defs.' SMF ¶ 23; Pl.'s Resp. SMF ¶ 9. The severity of these crimes is slight. Accordingly, this factor could support a finding of excessive force.

The second relevant factor is whether plaintiff posed an immediate threat to the safety of defendants or others. *Graham*, 490 U.S. at 396. Defendants argue that this factor weighs in their favor because plaintiff "displayed 'some initial reluctance to exit the vehicle,'" Defs.' Mem. at 18 (quoting Dkt. No. 1 ¶ 18), argued with defendants, Defs.' Mem. at 18, and resisted their attempts to physically remove him from the vehicle, *id.*

But even assuming Officer Patterson perceived plaintiff's general noncompliance as threatening, a reasonable juror could nevertheless conclude that Officer Patterson's belief was unreasonable. As plaintiff points out, Pl.'s Opp. at 8, the record lacks any evidence that plaintiff either committed or threatened to commit any acts of physical violence against defendants or anyone else

during the traffic stop. *See* Patterson BWC at 19:29:01–19:32:21. Accordingly, this factor could support a finding of excessive force.

The third relevant factor is whether plaintiff was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. Defendants argue that this factor weighs in their favor because plaintiff refused defendants' orders to exit the vehicle and physically resisted their attempts to forcibly remove him from the vehicle. Defs.' Mem. at 18. In opposition, plaintiff points out that he never attempted to flee. Pl.'s Opp. at 8.

Viewing the credible evidence in the light most favorable to plaintiff, this factor is neutral. On one hand, plaintiff admittedly resisted defendants' efforts to remove him from the vehicle by "bracing his feet against the car's floor" and pulling away from defendants. Defs.' SMF ¶ 21; Pl.'s Resp. SMF ¶ 9. But on the other hand, plaintiff never attempted to flee the traffic stop, and he had even started to comply with Officer Patterson's orders in the moments before he was tased. *See* Patterson BWC at 19:29:01–19:32:21.

The fourth relevant consideration is whether Officer Patterson warned plaintiff before using force. *See Jones*, 963 F.3d at 228 (noting that the Circuit's "precedents suggest that it is not excessive force to deploy tasers, after a warning, against arrestees who are dangerous or resisting arrest"). Defendants argue that Officer Patterson's repeated warnings to plaintiff (*i.e.*, that he would be tased if he continued to resist) preclude a finding that Officer Patterson used

- 19 -

unreasonable force.  Defs.' Mem. at 19.  In opposition, plaintiff argues that a reasonable jury could conclude that tasing plaintiff was unreasonable even after Officer Patterson's warnings.  Pl.'s Opp. at 8.

Based on the available record, this factor is neutral.  It is undisputed that Officer Patterson warned plaintiff multiple times that he would be tased if he did not exit the vehicle.  *See* Defs.' SMF ¶ 15; Pl.'s Resp. SMF ¶ 7.  But still, there is also evidence that plaintiff was complying with Officer Patterson's orders when Officer Patterson suddenly re-initiated force by attempting to grab plaintiff and then tasing him without additional warning.  *See* Pl.'s Decl. ¶ 5 ("In a matter of seconds after being threatened to be[ ] tased I voluntarily attempted to exit the vehicle, informing the officers I was doing so.  Both officers grabbed me and pulled me out of the car as I was attempting to exit the vehicle and while I was stepping out Officer Patterson tased me twice in my hand and my chest."); Patterson BWC at 19:32:11–19:32:27.  Accordingly, a reasonable juror could conclude that Officer Patterson used excessive force notwithstanding the fact that he warned plaintiff.

Another relevant consideration is whether Officer Patterson had "a reasonable opportunity to re-assess the circumstances before utilizing additional force."  *Jones*, 963 F.3d at 236.  As the Second Circuit explained in *Jones*:

> It is . . . important that courts not isolate a particular act of force by an officer if it was intertwined with other acts of force in rapid succession where there was no reasonable opportunity to re-assess.

> However, where such an opportunity to re-assess reasonably exists, officers must consider whether additional force is necessary under the circumstances confronting the officer.

*Id.*

Viewing the available record in the light most favorable to plaintiff, a reasonable juror could conclude that Officer Patterson had a reasonable opportunity to reassess the circumstances before deploying his taser. Officer Patterson deployed his taser just over three minutes into the traffic stop. *See* Patterson BWC at 19:29:00–19:32:22. Before that, Officer Patterson and other officers had attempted to physically remove plaintiff from the vehicle. Defs.' SMF ¶¶ 16, 20–21; Pl.'s Resp. SMF ¶¶ 7, 9.

At some point, plaintiff indicated that he would voluntarily exit the vehicle. Patterson BWC at 19:32:10–19:32:12. Defendants acknowledged plaintiff's willingness to comply by releasing him. *Id.* at 19:32:13–19:32:20. As plaintiff slowly started to exit the vehicle, Officer Patterson suddenly stepped towards plaintiff and attempted to grab him. *Id.* at 19:32:17–21. When plaintiff reflexively pulled back, Officer Patterson tased plaintiff for five seconds. *Id.* at 19:32:19–19:32:26. Given plaintiff's willingness to comply, a reasonable juror could conclude that Officer Patterson had a fair opportunity to reassess the circumstances before deploying his taser.

A final relevant consideration is the degree of force used. *See Tracy*, 623 F.3d at 98. The Second Circuit has held that "the use of a taser, like pepper

spray, constitutes significant force." *Jones*, 963 F.3d at 226.  The undisputed record established that Officer Patterson used "significant force."

In sum, a reasonable juror could conclude that Officer Patterson used excessive force by tasing plaintiff.  Accordingly, Officer Patterson has not demonstrated that he is entitled to summary judgment on plaintiff's § 1983 excessive force or state law assault and battery claims at this stage.[3]

### 1.    **Qualified Immunity**

Alternatively, Officer Patterson argues that he is entitled to qualified immunity from plaintiff's excessive force claim.  Defs.' Mem. at 20–21.  In opposition, plaintiff argues that Officer Patterson's conduct violated his clearly established constitutional rights.  Pl.'s Opp. at 9.

"Qualified immunity protects government officials from civil damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jones*, 963 F.3d at 224 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, (2009)

---

[3] Plaintiff does not appear to argue that the other defendants' attempts to physically remove him from the vehicle constituted excessive force. *See generally* Pl.'s Opp. at 8–9. To the extent that he does, that claim fails. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Rogoz v. City of Hartford*, 796 F.3d 236, 246 (2d Cir. 2015). For the reasons explained *supra*, defendants were authorized to order plaintiff out of the vehicle and arrest him. *See supra* Point IV.B. And it is undisputed that plaintiff refused multiple orders to exit the vehicle before defendants attempted to physically remove him from the vehicle. Defs.' SMF ¶¶ 15–18, 20–21; Pl.'s SMF ¶¶ 7, 9. Applying the relevant factors to the undisputed facts, no reasonable juror could conclude that defendants used excessive force by attempting to pull plaintiff from the vehicle. Accordingly, plaintiff's § 1983 excessive force and state law assault and battery claims are dismissed as to the other UPD officer defendants.

(internal quotation omitted)).  "[W]hen an official raises qualified immunity as a defense, the court must consider whether: '(1) . . . the official violated a statutory or constitutional right, and (2) . . . the right was 'clearly established' at the time of the challenged conduct.'"  *Jones*, 963 F.3d at 224 (quoting *Ricciuti v. Gyzenis*, 834 F.3d 162, 167 (2d Cir. 2016) (internal quotation omitted)).

At step one, a court asks whether the factual record, taken in the light most favorable to the nonmovant, shows that "the officer's conduct violated a constitutional right." *Scott v. Harris*, 550 U.S. 372, 377 (2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  For the reasons explained *supra*, a reasonable juror could conclude that Officer Patterson used excessive force by tasing plaintiff—a non-threatening, non-fleeing, and arguably compliant misdemeanant.  *See supra* Point IV.D.

At the second step, a court "must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Prior to plaintiff's arrest on April 10, 2024, it was "clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others." *Jones*, 963 F.3d at 225 (citing *Tracy*, 623 F.3d at 98-99); *see also Muschette ex rel. A.M. v. Gionfriddo*, 910 F.3d 65, 69 (2d Cir. 2018) (finding it "clearly established that officers may not use a taser against a compliant or non-threatening

suspect"). And by that date, the Second Circuit had also held that "police may violate clearly established law by *initiating* significant force against a suspect who is only passively resisting." *McKinney v. City of Middletown*, 49 F.4th 730, 742 (2d Cir. 2022) (emphasis in original).

To be sure, a reasonable juror could conclude from the available record that plaintiff was "resisting" at the time Officer Patterson tased him. But because a reasonable juror could also conclude that plaintiff was non-threatening at the relevant time, and that Officer Patterson initiated "significant force" when plaintiff was either compliant or perhaps passively resisting arrest, the Court cannot conclude that Officer Patterson is entitled to qualified immunity as a matter of law at this stage of the proceedings.

## E.  Section 1983 Municipal Liability

Defendants have moved for summary judgment on all of plaintiff's claims, but they have not addressed the question of municipal liability under § 1983. *See generally*, Defs.' Mem. To be fair, it is not entirely clear that plaintiff has actually attempted to assert any § 1983 claims against the City. *See generally* Compl. But out of an abundance of caution, the Court will address the question of municipal liability under § 1983.

To impose § 1983 liability on a municipality, a plaintiff must show: "“(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982

F.3d 86, 97 (2d Cir. 2020).  "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404 (1997) (emphasis in original).

Plaintiff's only surviving § 1983 claim is his excessive force claim against Officer Patterson.  *See supra* Point IV.B–D.  There is insufficient evidence in the available record from which a reasonable factfinder could conclude that any municipal policy or custom of the City was the "moving force" behind this alleged violation of plaintiff's rights.  Accordingly, any § 1983 claim asserted against the City must be dismissed.

## F.  <u>State-Law Negligent Hiring, Training, and Supervision Claims</u>

Next, defendants argue that they are entitled to summary judgment on plaintiff's state-law negligent hiring, training, and supervision claim against the City because defendants were acting within the scope of their employment at all relevant times.  Defs.' Mem. at 23–26.  Plaintiff has not meaningfully opposed this argument.  *See* Pl.'s Opp. at 9.

"To maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment."  *Velez v. City of N.Y.,* 730 F.3d 128, 136–37 (2d Cir. 2013) (internal quotation

omitted).  The available record does not contain sufficient evidence from which a reasonable juror could conclude that any defendant acted outside the scope of their employment as police officers.  Accordingly, this claim is dismissed.

### G.  N.Y. Civil Rights Law § 79-n

Lastly, defendants argue that they are entitled to summary judgment on plaintiff's claim for violations of § 79-n of the N.Y. Civil Rights Law because there is not sufficient evidence from which a reasonable juror could conclude that defendants were motivated by racial bias.  Defs.' Mem. at 23–26.  Plaintiff has not meaningfully opposed this argument.  *See* Pl.'s Opp. at 9.

Section 79-n(2) of the N.Y. Civil Rights Law creates a private right of action against "[a]ny person who intentionally . . . causes physical injury . . . to another . . .  in whole or in substantial part because of a belief or perception regarding the race . . . of a person."  N.Y. Civ. Rights Law § 79-n(2).  "[T]o recover under the statute, the plaintiff must demonstrate actual or imminent physical harm resulting from bias-related violence or intimidation."  *A.M.P. v. Benjamin*, 201 A.D.3d 50, 55 (3d Dep't 2021) (internal quotation marks omitted).

The available record lacks sufficient evidence from which a reasonable factfinder could conclude that defendants were motivated by racial or any other form of bias towards plaintiff.  *See* Defs.' SMF ¶ 20 (stating that plaintiff believed the officers initiated force because they "became tired of arguing with

him" (citing Cartwright Decl., Ex. B, Dkt. No. 30-3 at 58–59)). Accordingly, this claim must be dismissed.

## V.    CONCLUSION

Plaintiff's § 1983 excessive force claim and state-law assault and battery claims against Officer Patterson warrant a trial. Plaintiff's other claims do not.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment (Dkt. No. 30) is GRANTED in part and DENIED in part;

2. Defendants' motion for summary judgment is DENIED as to:

    a. Plaintiff's § 1983 excessive force claim against Officer Patterson; and

    b. Plaintiff's state-law assault and battery claims against Officer Patterson;

3. Defendants' motion is GRANTED as to all of plaintiff's other claims and those claims and defendants are DISMISSED.

4. The parties shall file a status report within (60) SIXTY DAYS advising the Court of trial readiness.

The Clerk of the Court is directed to terminate the pending motion and set a status report deadline accordingly.

IT IS SO ORDERED.


Dated:  July 23, 2026
        Utica, New York.

David N. Hurd
U.S. District Judge

- 28 -